

**SO ORDERED.**

**SIGNED this 29 day of May, 2012.**

_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 10-52808-JDW |
| BOBBIE S. SMITH, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

| | |
|---|---|
| For Debtor: | Luman C. Earle
1101-E Hillcrest Parkway
Dublin, Georgia 31021 |
| For Chapter 7 Trustee: | David S. Ballard
Post Office Box 70879
Albany, Georgia 31708 |
| For Kenneth S. Nugent, P.C.: | Adam Ward Deaver
712 Riverside Drive
Macon, Georgia 31201 |

**MEMORANDUM OPINION**

This matter comes before the Court on the Chapter 7 Trustee's Motion to Disgorge Fees. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

In December 2008, Debtor Bobbie Smith was driving in Macon, Georgia, when her automobile was struck from behind by a truck. The truck driver fled the scene of the accident. Shortly after the accident, Debtor contacted the law firm of Kenneth S. Nugent, P.C. regarding a possible personal injury claim for lower back pain.[1] The law firm sent an investigator to Debtor's home to obtain a statement from Debtor and her signature on, among other things, an attorney-client contract. In addition to serving as an engagement letter, the contract gave the law firm Debtor's power of attorney "to execute and endorse all releases, drafts, checks and receipts ... which are necessary to effect a settlement" of Debtor's personal injury claim. (Exhibit D-1, at 2.) Debtor signed the contract on January 7, 2009. Adam Deaver, an attorney at the Nugent firm, was assigned to represent Debtor.

On June 5, 2009, Georgia Farm Bureau Mutual Insurance Company mailed Mr. Deaver a check payable to Debtor and her husband in the amount of $2,500 as a settlement offer. A representative of the insurance company advised Mr. Deaver that if Debtor rejected the offer, he should return the check.

---

[1] Debtor settled her property damage claim without any legal assistance.

On June 24, 2009, Debtor signed a settlement memorandum that provided for a recovery of $2,500 from Georgia Farm Bureau, with $1,167.15 of that amount going to the Nugent firm for fees and expenses, and the balance of $1,332.85 due to Debtor. The settlement memorandum further provided as follows:

> By executing this document, I understand that I am giving my attorney the authority to settle my claim under the terms as outlined above. I understand that this settlement agreement is enforceable under law at the time that I sign this agreement, and that I cannot back out of this settlement or renegotiate it. ...
> I hereby verify that I am currently not in Bankruptcy.
> I hereby approve the above settlement and distribution of proceeds for the accident date of 12/08.

(Exhibit T3.) Debtor testified that she did not fully understand the settlement memorandum and that no one explained it to her. Mr. Deaver stated he discussed the memorandum with Debtor before she signed it, but he could not provide the date of the conversation or any details about its content.

In addition to the $2,500 settlement, the insurance company issued two checks for Debtor's medical expenses. The company issued a check for $100 on May 22, 2009, and issued a check for $3,494.49 on September 14, 2009.

After Debtor signed the settlement memorandum on June 24, 2009, the Nugent firm endorsed the $2,500 settlement check and deposited the proceeds into its escrow account. Sometime after that, Debtor notified the Nugent firm that she was seeking additional medical tests from her doctor and, therefore, the firm should not close her case.[2] There is no evidence of the law firm's response, if any, to Debtor's request to keep her case open.

---

[2] According to Mr. Deaver, Debtor's doctor attributed most of Debtor's medical issues to chronic health problems that pre-dated the car accident

3

More than a year later, on August 31, 2010, Debtor filed a Chapter 7 petition. She informed her bankruptcy attorney about the accident and said a settlement was pending, but she did not know whether she would receive any money. On the statement of financial affairs, she listed a pending lawsuit from the motor vehicle accident. The § 341(a) meeting of creditors was held on October 6, 2010. As of that date, Debtor had not received her share of the proceeds from the $2,500 settlement.

Debtor did not receive the settlement funds until late October 2010–16 months after she signed the settlement memorandum. According to Mr. Deaver, his office called Debtor shortly after depositing the insurance proceeds in June 2009 and asked her to come into the office to sign paperwork and pick up her check, in accordance with the firm's policy. However, Debtor never picked up the check, and she testified that she was never asked to do so. Eventually, Mr. Deaver's office finalized the settlement by mail in October 2010. He attributed the long delay in doing so to communication problems.

As part of the settlement finalization process, the Nugent firm sent Debtor three documents for her signature. First was a power of attorney, giving the Nugent firm the authority "to negotiate and endorse all settlement documents, including settlement checks and liability releases" relating to Debtor's personal injury claim. In addition, the power of attorney required Debtor to indicate whether she had a pending bankruptcy case. Debtor made a handwritten notation that she had filed a bankruptcy case on August 31, 2010. (Exhibit T1.) Second was a settlement statement that required Debtor to acknowledge a series of facts about her settlement and the representation provided by Mr. Deaver. Item 11 on the settlement statement required her to acknowledge that she did not have a pending bankruptcy case. Debtor made a handwritten

4

notation that she had filed a bankruptcy case on August 31, 2010. (Exhibit T2.) Third was a document releasing the insurance company from all further claims under Debtor's uninsured motorist coverage in exchange for consideration of $2,500. (Exhibit T4.) Debtor signed all the documents on October 28, 2010, and returned them to the Nugent firm. She included with the documents a handwritten a letter, dated October 25, 2010, that said, "Would you please give me a call when you received these papers." (Exhibit Debtor 1.) Within the next few days, Debtor received her share of the $2,500 settlement,[3] but never received the phone call she requested. Debtor did not inform either her bankruptcy attorney or the Trustee that she received the money.

During his representation of Debtor, Mr. Deaver never met with her in person. According to Debtor, they spoke on the phone five times at the most. Mr. Deaver did not offer any time records into evidence. He stated that his records show only the date of phone conversations with Debtor, and do not summarize the content of those conversations. Debtor's own records of her dealings with the Nugent firm were destroyed in a house fire. However, Debtor testified that Mr. Deaver was difficult to reach by phone. She testified that she called his office three or four times a week. Sometimes she was able to speak with Mr. Deaver's assistant; other times she just spoke to a switchboard operator.

The Trustee had similar problems getting a response from Mr. Deaver. The Trustee's office began calling Mr. Deaver in March 2011 to request information about the personal injury claim listed on Debtor's statement of financial affairs. According to Mr. Deaver, after the first contact from the Trustee's office he immediately ordered Debtor's file, which had already been

---

[3] Debtor testified that she received the check on or about Halloween of 2010. She remembered the date because her birthday was approaching, and she used the money to purchase dining room furniture.

5

sent to storage, and asked his staff to contact the Trustee. However, he did not personally inform the Trustee's office of his actions, and the Trustee heard nothing from his staff.

After several more months, the Trustee still had not received any information from Mr. Deaver. Therefore, on October 10, 2011, the Trustee issued a subpoena for Mr. Deaver's file. Mr. Deaver timely answered the subpoena, and the Trustee received the file before the end of October 2011. However, the Trustee was unable to determine from the documents in the file whether Mr. Deaver had settled Debtor's case prepetition with the June 24, 2009, settlement memorandum or postpetition with the October 28, 2010, settlement statement and release. Again, the Trustee attempted to contact Mr. Deaver for clarification by letter dated October 28, 2011. (Exhibit T7.) The letter went unanswered.

David Ballard, an attorney for the Trustee, began working on the case in December 2011. According to his time records, he left multiple telephone messages for Mr. Deaver during that month. On December 30, 2011, he wrote a letter to Mr. Deaver asking "if and when you settled the Debtor's personal injury case[,]" and stating he would seek disgorgement of the Nugent firm's fees if Mr. Deaver failed to respond. (Exhibit T8.) Mr. Deaver did not respond, and on February 1, 2012, Mr. Ballard filed the disgorgement motion at issue in this case. In addition to disgorgement, the motion requested sanctions in the form of payment of attorney fees and expenses incurred by the Trustee due to Mr. Deaver's lack of communication. Mr. Ballard served the motion on Mr. Deaver and on Kenneth Nugent.

The Court held a hearing on the motion on March 12, 2012. No one from the Nugent firm appeared at the hearing. The Court subsequently ordered Mr. Nugent and Mr. Deaver to appear at a hearing on April 16, 2012.

6

Mr. Deaver appeared at the April hearing. Mr. Nugent did not attend the hearing. Mr. Deaver said he believed Mr. Nugent was sailing in the Caribbean.[4] During the hearing, the parties presented the evidence detailed above, and the Court orally denied the Trustee's motion to the extent it sought disgorgement of the Nugent firm's fees. The Court took under advisement the question of whether to grant the Trustee reimbursement for attorney fees and expenses.

## Conclusions of Law

The Bankruptcy Code requires the Chapter 7 Trustee to "collect and reduce to money the property of the estate[.]" 11 U.S.C. § 704(a)(1). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. § 541(a)(1). In this case, Debtor listed in her statement of financial affairs a pending lawsuit arising from a motor vehicle accident. In attempting to learn more about the lawsuit and whether it was property of the estate, the Trustee contacted Debtor's personal injury attorney, Mr. Deaver, on multiple occasions by telephone and by mail. Mr. Deaver failed to respond until compelled to do so, first by subpoena in October 2011 and second by this Court's order to appear at an April 2012 hearing. At issue is the Trustee's motion to impose sanctions.

In deciding the Trustee's motion, the Court has considered Mr. Deaver's representation of Debtor in the personal injury case as well as his interactions with the Trustee. The evidence raises questions about Mr. Deaver's compliance with the Georgia Rules of Professional Conduct[5] for attorneys. Rule 1.4(a)(3) requires attorneys to "keep the client reasonably informed about the

---

[4] Mr. Deaver indicated he had limited contact with Mr. Nugent and was unsure whether Mr. Nugent had received notice of the order to appear.

[5] Available online at http://www.gabar.org/barrules/ethicsandprofessionalism/index.cfm.

7

status of the matter." Rule 1.4(b) requires attorneys to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.15(I)(c) requires attorneys to "promptly deliver to the client or third person any funds or other property [in the attorney's possession] that the client or third person is entitled to receive," unless the law provides otherwise or the client agrees otherwise.

In this case, Debtor signed a settlement memorandum relating to her personal injury claim on June 24, 2009. The memorandum included the following language: "I understand that this settlement agreement is enforceable under law at the time that I sign this agreement, and that I cannot back out of this settlement or renegotiate it." (Exhibit T3.) Based on this language, the Court concludes Debtor's claim was legally settled on June 24, 2009. However, the evidence indicates Debtor did not understand the finality of her settlement.

Although Mr. Deaver told the Court that he discussed the settlement memorandum with Debtor before she signed it, Debtor testified that she did not fully understand the memorandum and that it was not explained to her. In fact, Debtor called Mr. Deaver's office sometime after signing the memorandum and asked that her case remain open while she obtained additional medical tests. There is no evidence that Mr. Deaver or anyone in his office informed Debtor that her settlement was already final and legally binding and that any further attempts to establish injury would not increase her recovery. On the contrary, when Debtor filed for bankruptcy in August 2010, she told her bankruptcy attorney the personal injury case was still pending and listed it as pending in her statement of financial affairs. This evidence demonstrates that more than a year after the claim was settled, Debtor believed her personal injury case remained open. Debtor's confusion strongly suggests that Mr. Deaver failed to properly communicate with her as

required by Rule 1.4. Had Debtor been properly informed about the status of her case, the Trustee's involvement could have been avoided.

Debtor's misunderstanding likely was reinforced by the Nugent firm's failure to send Debtor her settlement check for more than a year after executing the settlement memorandum. This was apparently due in part to the firm's policy of having clients come into the office to receive the check and in part due to communication problems. However, neither explanation excuses the Nugent firm's failure to mail the settlement funds to Debtor within a reasonable time after she failed to come into the office.

In addition to Mr. Deaver's problems with client communications and disbursing client funds, the facts in this case raise other concerns. Georgia Rule of Professional Responsibility 1.1 requires a lawyer to "provide competent representation to a client. ... Competence requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The preparation reasonably necessary to represent a client in a personal injury case usually requires a personal evaluation of the client in a face-to-face meeting. See In re Atkins, No. 01-40125, 2005 WL 4980279, at *5 (Bankr. S.D. Ga. Dec. 23, 2005) (Walker, J.); In re Thornton, No. 04-51703, 2005 WL 4980268, at *4 (Bankr. S.D. Ga. Aug. 8, 2005) (Walker, J.).  No such personal meeting occurred between Debtor and Mr. Deaver. Although Mr. Deaver obtained Debtor's medical records and discussed them with her doctor, such actions, by themselves, are not necessarily sufficient. Only a face-to-face meeting enables the attorney to fully evaluate the individual circumstances of a client's case. Absent some unusual or special circumstances not present in this case, the lack of a face-to-face meeting raises doubts about Mr.

9

Deaver's preparation in representing Debtor.[6]

Whatever questions the Court may have about Mr. Deaver's compliance with the Rules of Professional Responsibility, the Court can conclude that he settled Debtor's personal injury claim on June 24, 2009–more than a year prior to her bankruptcy filing. As a result, the claim is not property of the estate subject to administration by the Trustee. Because it is not property of the estate and because the Nugent firm was paid more than a year prior to the petition date, the Court has no jurisdiction over its fees. See 11 U.S.C. §§ 327(a) and (e), 329(a), 330(a)(1). Therefore, the Court must deny the Trustee's request for disgorgement.

In addition to disgorgement, the Trustee's motion requested payment of his fees and expenses as a sanction for Mr. Deaver's failure to respond to repeated requests for information about the settlement of Debtor's personal injury claim. The Court has both statutory authority under 11 U.S.C. § 105(a)[7] and inherent authority to impose sanctions in appropriate circumstances. See Ginsberg v. Evergreen Security, Ltd. (In re Evergreen Security Ltd.), 570 F.3d 1257, 1273-74 (11th Cir. 2009). Appropriate circumstances include violation of a court order or rule, or bad faith caused by abuse or disruption of the judicial process. Id. (citing Gwynn v. Walker (In re Walker), 532 F.3d 1304, 1309 (11th Cir. 2008)); see also In re Conrad, 279 B.R. 320, 324 (Bankr. M.D. Fla. 2002) ("This Court has the power to impose monetary sanctions where there is sufficient evidence to demonstrate an abuse of the judicial system to achieve an improper purpose by the debtor.").

---

[6] During the hearing, Mr. Deaver reported that he has changed his practices, and he now attempts to meet each client in person.

[7] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

10

Sanctions may include a Chapter 7 trustee's attorney fees and costs. For example, in 56 Associates and 57 Associates v. Diorio, 381 B.R. 431 (D.R.I. 2008), the bankruptcy judge authorized the Chapter 7 trustee to sell property co-owned by the debtor and his non-debtor partners free of the interests of the partners. Id. at 439. The trustee later filed a motion to compel cooperation of the partners because they were interfering with the trustee's efforts to market the property. The bankruptcy court granted the motion and entered two related orders. First, the court ordered the partners to give the trustee keys to the property. Second, it ordered the partners to pay the trustee's attorney fees and costs related to the motion to compel. Id. The district court affirmed the award of attorney fees under § 105(a). Id. at 440-41.

Similar sanctions were granted under different circumstances in In re Jones, 446 B.R. 466 (Bankr. D. Kan. 2011). The Chapter 7 debtors, relying on the advice of counsel, failed to disclose an annuity the husband had received in settlement for a workplace injury. Eight years after the petition was filed, the trustee discovered the asset and reopened the case. Id. at 470-71. The debtors amended their schedules and exempted the annuity over the trustee's objection. Id. at 471, 474. Although the court allowed the exemption, it nevertheless imposed sanctions of $5,000 against the debtors under § 105(a) because their "failure to disclose the asset harmed the Trustee by causing him to expend time and incur fees and expenses in his investigation of the asset." Id. at 474. The sanctions served to "reimburse [the trustee] for the expenses he would not have otherwise incurred but for Debtors' failure to fulfill their obligations under 11 U.S.C. § 521." Id.

However, 56 Associates and Jones do not support Trustee's request for fees in this case. Unlike the partners in 56 Associates, Mr. Deaver did not interfere with a court order. Unlike the debtors in Jones, Mr. Deaver did not violate a statutory duty. Furthermore, there is no evidence

11

that Mr. Deaver's failure to communicate with the Trustee was a bad faith attempt to manipulate the judicial system. While Mr. Deaver's behavior violated conventions of professional courtesy and created unnecessary costs for the Trustee, it is not sufficiently egregious as to warrant the imposition of sanctions. Therefore, the Court will deny the Trustee's request for sanctions.

For the forgoing reasons, the Trustee's motion to disgorge fees and impose sanctions will be denied.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT